IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORLANDO & PAULETTE
DEJESUS, FATHER AND
MOTHER AND NEXT OF KIN OF
BLAISE DEJESUS, DECEASED,

    Plaintiffs,

    v.

THE STATE OF DELAWARE, et. al.,

    Defendants.

Civil Action No. 15-1065-CFC

Daniel C. Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, Delaware

*Counsel for Plaintiffs*

Joseph C. Handlon, Ryan P. Connell, DEPARTMENT OF JUSTICE, Wilmington, Delaware

*Counsel for Defendants*

## MEMORANDUM OPINION

November 8, 2019
Wilmington, Delaware

_____
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Defendants Todd Drace, John Kirlin, and Tiffani Starkey have moved for summary judgment on Plaintiffs' claim for damages brought under 42 U.S.C. § 1983. D.I. 57. Defendants are correctional officers who worked in the segregated housing unit ("SHU") of the James T. Vaughn Correctional Center the day Blaise DeJesus committed suicide in an SHU cell. Plaintiffs, the parents of DeJesus, base their § 1983 claim on alleged violations of the Eighth and Fourteenth Amendments of the United States Constitution. For the reasons discussed below, I will grant Defendants' motion.

## II. BACKGROUND

### A. Relevant Facts

On August 1, 2014, DeJesus was convicted of violating the terms of his probation. D.I. 58 at 3. Based on his previous heroin use, he was sentenced to complete the CREST Substance Abuse Program and was immediately committed to the Central Violation Probation Center to await transfer to the CREST program. D.I. 1 ¶¶ 13–15. When DeJesus exhibited withdrawal symptoms at the probation center, he was transferred to Vaughn's infirmary for treatment. *Id.* ¶¶ 16–17. At the infirmary, medical professionals treated DeJesus for four days before

discharging him on August 5, 2014. *Id.* ¶¶ 18–20. Upon his release, an order was placed to transfer DeJesus to Vaughn's general inmate housing. *Id.* ¶ 21. But when it was discovered that DeJesus's brother worked at Vaughn, DeJesus was instead transferred to the SHU to separate him from other prisoners for safety reasons. *Id.* ¶¶ 23–24.

Officer Drace escorted DeJesus to his single cell in the SHU at around 3:30 p.m. on August 5, 2014. D.I. 59 at A–29. A few hours later, DeJesus hung himself in his cell. D.I. 1 ¶ 43. Prison staff found DeJesus's body at 9:35 p.m. D.I. 63 Ex. A; D.I. 59 at A–34 ¶ 7. DeJesus was pronounced dead at 10:05 p.m. D.I. 63 Ex. A.

The parties agree that DeJesus interacted with Defendants during his brief time in the SHU. The parties very much dispute, however, the extent and nature of those interactions.

In their opposition to Defendants' summary judgment motion, Plaintiffs rely on the deposition testimony of four witnesses who were incarcerated in the SHU on the day of DeJesus's suicide. That testimony is conflicting, but viewed in the light most favorable to Plaintiffs, at least one inmate witness testified that DeJesus told Officers Starkey and Kirlin that he did not belong in the SHU, D.I. 61 Ex. B at 8:15, Ex. E at 14:15–16; D.I. 59 at A–34 ¶ 2, that he could not "take being in the [SHU]," D.I. 61 Ex. D at 6:8–9, Ex. F at 5, that he wanted to speak to someone, *id.*

2

Ex. E at 13:12–13, 14:3–5, Ex. B at 8:13–14, Ex. D at 5:21, 8:4, that he needed to make a phone call, *id.* Ex. E at 6:11–13, 13:11–12, Ex. C at 6:6–7, 16:5, that he "wasn't in his right state of mind," *id.* Ex. B at 6:13–14, that he felt sick and was "not right," *id.* Ex. B at 10:12–13, that he was feeling anxious, *id.* Ex. B at 14:2–5, and that he was going through withdrawals, *id.* Ex. B at 8:16–24. One of the inmate witnesses testified that he "think[s]" but is "not . . . sure" that DeJesus told Officer Drace "to call mental health or something like that," *id.* Ex. C at 14:19–23, 15:13–23, and that DeJesus told Officer Starkey "[s]omething about the mental health," *id.* Ex. C at 17:6–7. One of the inmate witnesses testified that Officers Starkey and Kirlin "kept brushing [DeJesus] off." *Id.* Ex. B at 6:15. Another inmate similarly testified that those officers "blew [DeJesus] off." *Id.* Ex. D at 16:2–4. One of the inmate witnesses testified that DeJesus cried during a discussion with Officer Starkey and that Officers Starkey and Kirlin laughed about the discussion. *Id.* Ex. E at 10:17–20, 12:4–21. Finally, an inmate witness testified that DeJesus looked "disheveled." *Id.* Ex. B at 5:7.

Officer Drace recalled nothing notable about DeJesus in his interactions with him. Drace observed that DeJesus's posture was "just more head down," but Drace did not recall any crying or weeping on DeJesus's part. D.I. 59 at A–31. Officer Starkey testified that, while in the SHU, DeJesus mentioned "something about not belonging in this cell" but she noted that "[n]othing seemed off with

3

him." *Id.* at A–34 ¶¶ 2–3. She also stated that DeJesus did not express any thoughts of suicide or self-harm. *Id.* at A–34 ¶ 3. Finally, Officer Kirlin stated that nothing about DeJesus's behavior suggested to him "that he posed a suicide risk." *Id.* at A–35 ¶ 4.

Staff at Vaughn performed an investigation into the circumstances regarding DeJesus's suicide. *See* D.I. 61 Ex. F at 1. An official memorandum describing the investigation stated that area checks and phone punches[1] had not been completed on A-tier (the tier on which DeJesus was located) for two and a half hours the evening of DeJesus's suicide. *Id.* Officer Kirlin was suspended for three days because of his failure to ensure that the area checks and punches were performed that night. *Id.* SHU inmates testified that Officer Kirlin often failed to conduct the required checks. *Id.* Ex. E at 22:4–23:17, Ex. B at 7:22–8:9, Ex. C at 9:6–7, Ex. F at 5.

### B. Procedural Background

In Count II of their complaint, Plaintiffs alleged their single cause of action against Defendants: a claim for deliberate indifference to DeJesus's particular vulnerability to suicide in violation of the Eighth and Fourteenth Amendments.

---

[1] "A 'phone punch' involves the correctional officer looking into each individual[ ] inmate's cell." *Hall v. State*, 12 A.3d 1123, 1125 (Del. 2010).

4

D.I. 1 at 7–8. Plaintiffs' claims against other parties were previously dismissed with Plaintiffs' consent. D.I. 14; D.I. 57.

Defendants have moved for summary judgment on Count II. D.I. 57. In support of their motion, they assert that Plaintiffs have failed to establish an Eighth Amendment claim for deliberate indifference. D.I. 59 at 2. They also allege that qualified immunity bars Plaintiffs' claim. *Id.*

### III. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a

material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

## IV. EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM

When a plaintiff seeks to hold a prison official liable for failing to prevent a detainee's suicide under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment,[2] the plaintiff must show:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

*Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017) (internal quotation marks omitted). In this case, the record evidence does not support a finding that DeJesus had a particular vulnerability to suicide, that Defendants knew or should have known about any such vulnerability, or that Defendants acted with deliberate indifference.

---

[2] Plaintiffs confusingly argue in their brief that "the risk of suicide – once again, is not the only form of deliberate indifference Plaintiffs alleged and maintained," D.I. 61 at 7, and that "a claim based on the lack of medical treatment prior to an inmate's suicide" differs from "damages flowing from the suicide itself," *id.* at 6 n. 4. I am not sure what Plaintiffs mean by these statements. As best as I can tell, Plaintiffs are trying to make the point that they can recover damages for pain and suffering DeJesus endured before he committed suicide. The scope of damages, however, has no bearing on Defendants' liability, which is the sole question raised in Defendants' summary judgment motion.

7

## A. Whether DeJesus Suffered from a Particular Vulnerability to Suicide

First, the record does not support a finding that DeJesus suffered from a particular vulnerability to suicide. To establish such a vulnerability, there "must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Id.* at 222 (internal quotation marks and citation omitted). "The strong likelihood of suicide must be so obvious that a lay person would easily recognize the necessity for preventative action; the risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (citation omitted).

Here, the record evidence does not suggest that DeJesus's physical condition or the statements he made while in the SHU would have made his risk of suicide so obvious that a lay person would have easily recognized the necessity for preventative action. Plaintiffs point to inmate testimony that DeJesus looked disheveled and that he told Defendants he wanted to speak to someone, wanted to leave the SHU, did not feel well, was going through withdrawals, and wanted "mental health." That testimony, however, even if true, does not support a finding that DeJesus would likely harm himself.

That DeJesus looked "disheveled" would not have made it obvious that he was likely to commit suicide. DeJesus may have looked disheveled for many

8

reasons unrelated to his intent to harm himself. Moreover, DeJesus's alleged statements to Officers Kirlin and Starkey that he needed to speak to (or call) someone, that he needed help, and that he couldn't take being in the SHU would not have made it obvious to a layperson that he would likely commit suicide. DeJesus may have wanted to speak to someone, receive help, and leave the SHU for reasons that had no connection to suicidal thoughts. In the same conversations in which he stated that he needed to speak to someone and needed help, he also said he "did not belong in the SHU." D.I. 61 Ex. B at 8:15, Ex. E at 14:15–16. As common sense suggests and as Officer Starkey noted, "it is not uncommon for inmates to say that they should not be in SHU." D.I. 59 at A–34 ¶ 3.

DeJesus's statements that he was sick, "not right," feeling anxious, and suffering withdrawal symptoms and his two requests (each made separately to one officer) to "call mental health" also would not have made it obvious to a layperson that he intended to kill or harm himself, especially given the fact that medical professionals had cleared and discharged DeJesus from the infirmary earlier that day. At most, these statements indicated that DeJesus was *possibly* experiencing mental pain and suicidal thoughts. A "mere possibility" that a suicide would be attempted, however, is not enough to show a particular vulnerability to suicide. *Palakovic*, 854 F.3d at 222.

## B. Whether Defendants Knew or Should Have Known of DeJesus's Particular Vulnerability to Suicide

The record evidence also does not support a finding that Defendants knew or should have known about DeJesus's vulnerability to suicide. Even if a strong likelihood of suicide exists, a plaintiff must also show that the accused official "knew or should have known of that strong likelihood." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991) (internal quotation marks omitted). The "should have known" element refers to "something more than a negligent failure to appreciate the risk of suicide . . . though something less than subjective appreciation of that risk." *Woloszyn*, 396 F.3d at 320 (citation omitted).

Here, even if DeJesus suffered from a particular vulnerability to suicide, nothing in the record supports a finding that Defendants knew or should have known about that vulnerability. As explained above, DeJesus did not display any symptoms or make statements to Defendants that would have made it obvious to a layperson that he would harm himself. Nothing in the record suggests that DeJesus expressed thoughts of suicide or self-harm to Defendants or that other circumstances existed that would have given Defendants reason to believe that Defendant was contemplating suicide.

## C. Whether Defendants Acted With Deliberate Indifference

Finally, the record does not support a finding that Defendants acted with deliberate indifference to DeJesus's particular vulnerability to suicide. The record does contain inmate testimony that Officer Drace responded with sarcasm to DeJesus's request for a phone call, D.I. 61 Ex. C at 14:4–14, that Officers Starkey and Kirlin laughed when DeJesus was crying while asking for a phone call, *id.* Ex. E at 10:17–20, 12:4–21, and that Officers Starkey and Kirlin "brushed off" DeJesus's requests, *id.* Ex. B at 6:15, Ex. D at 6:2–4. Though perhaps not optimal or sufficiently sympathetic to DeJesus's emotional state at the time, such responses and reactions do not amount to deliberate indifference *to a particular vulnerability to suicide*. As discussed above, DeJesus did not suffer from a particular vulnerability to suicide that Defendants knew or should have known about. The record also contains evidence that Officer Kirlin was negligent in failing to complete area checks and phone punches in the SHU. But there is no evidence connecting that failure to DeJesus. And in any event, negligence does not amount to deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (stating that "deliberate indifference entails something more than mere negligence").

11

**D. Summary**

Overall, the record, viewed in the light most favorable to Plaintiffs, does not support a finding that DeJesus suffered from a particular vulnerability to suicide that Defendants knew or should have known about. Nor does it support a finding that Defendants acted with deliberate indifference. Nothing in the record leaves a question of material fact on these issues and therefore Plaintiffs' claim against Defendants fails as a matter of law.

## V. QUALIFIED IMMUNITY DEFENSE

As a general matter, government officials sued in their individual capacity under § 1983 are entitled to qualified immunity. *See Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). Qualified immunity protects government officials from liability for civil damages unless (1) the official's conduct violated a constitutional or statutory right; and (2) that violated right was "clearly established." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because Plaintiffs' have not established that Defendants were deliberately indifferent to DeJesus's particular vulnerability to suicide, Defendants have not violated a federal statute or a constitutional right and they are therefore entitled to qualified immunity.

## VI. CONCLUSION

For the foregoing reasons, I will grant Defendants' summary judgment motion on Count II of Plaintiffs' complaint.

The Court will enter an order consistent with this Memorandum Opinion.