IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORLANDO & PAULETTE
DEJESUS, FATHER AND
MOTHER AND NEXT OF KIN OF
BLAISE DEJESUS, DECEASED,

Plaintiffs,

v.

LT. TODD DRACE, et al.,

Defendants.

Civil Action No. 15-1065-CFC

---

Daniel C. Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, Delaware

*Counsel for Plaintiffs*

Ryan T. Costa, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware

*Counsel for Defendants*

## MEMORANDUM OPINION

July 26, 2021
Wilmington, Delaware

_Col. F. C._

COLM F. CONNOLLY
CHIEF JUDGE

This case comes to me on remand from the Third Circuit. Pending before

me is Defendants Todd Drace, John Kirlin, and Tiffani Starkey's renewed motion

for summary judgment of the deliberate indifference claim for damages Plaintiffs

filed under 42 U.S.C. § 1983. D.I. 73. Defendants are correctional officers

employed by the Delaware Department of Corrections (DOC). They worked in the

segregated housing unit (SHU) of the James T. Vaughn Correctional Center the

day Blaise DeJesus committed suicide in an SHU cell. Plaintiffs, the parents of

DeJesus, base their § 1983 claim on alleged violations of the Eighth and

Fourteenth Amendments of the United States Constitution.

I granted Defendants' original motion for summary judgment after

determining that Defendants were not deliberately indifferent to DeJesus's

vulnerability to suicide. Plaintiffs appealed that decision. The Third Circuit found

that Plaintiffs had alleged a claim of deliberate indifference to a serious medical

need that was "distinct from a claim that Defendants were deliberately indifferent

to a vulnerability to suicide." *DeJesus v. Delaware,* 833 F. App'x 936, 939 (3d

Cir. 2020). The Court held that "[b]ecause these are two different claims, and the

District Court did not examine one of them," *id.* at 940, a remand was warranted

for me "to determine whether Defendants are entitled to summary judgment on

Plaintiffs' claim that Defendants were deliberately indifferent to DeJesus's serious medical need," *id.* at 937.  I have studied the Third Circuit's decision and the parties' briefing filed in connection with Defendants' motion and I agree with Defendants that they are entitled to summary judgment.

## I.   BACKGROUND

The following statement of facts is taken from Plaintiffs' brief filed in opposition to Defendants' motion:

> **Background** . . . The parties agree that DeJesus came to the Specialized Housing Unit (the "SHU") in early August 2014 after taking various opiates.  Medical professionals had just discharged him from the prison infirmary.

> \* \* \* \*

> **Inmate Testimony:**  Inmate Warren Wilson testified that he was housed in the SHU and recalled DeJesus coming onto Wilson's tier in August 2014. Wilson explained that DeJesus was "disheveled," "going through withdrawal," and that he was not supposed to be in the SHU.  Wilson explained he overheard DeJesus saying this to another inmate, Derris Gibson.  Wilson further explained that "[e]very time the correctional officers come on the tier, he kept telling them he needed to talk to somebody, that, you know, he – he wasn't in his right state of mind and that he needed some help, and they just kept brushing him off."  Wilson further testified that DeJesus told the correctional officers that "he wanted to see somebody.  He wanted to talk to somebody."  Wilson overheard this during two or three occasions that evening.  Each time, DeJesus said "I need to see somebody, you know, I'm sick.  I'm not right,

2

pretty much." Wilson overheard DeJesus speaking to Kirlin and Starkey.

Gibson testified that he recalled DeJesus coming into the SHU. Gibson testified he overheard DeJesus tell correctional officers that he needed a phone call. Gibson testified that he knew DeJesus was withdrawing from drugs. Gibson overheard DeJesus tell Drace that he was feeling anxious, and Drace told DeJesus to "lay his ass down." Gibson further testified that he believes he overheard DeJesus tell Kirlin that he needed to see mental health and that he "[couldn't] take being [there]." Gibson also recalled DeJesus mention mental health and the phone call to Starkey.

Inmate Jason Gryzbowski also recalled DeJesus coming into the SHU. Gryzbowski testified that DeJesus complained to [] Kirlin and Starkey every time rounds were being made, stating he "can't take being in the room." DeJesus said he needed to speak with someone. Kirlin and Starkey "kept blowing him off." DeJesus complained about this five to six times.

Last, Michael Jones recalled DeJesus coming into the SHU. He heard DeJesus asking for a phone call, but Starkey mocked DeJesus to Kirlin saying that DeJesus was "crying" and then both Starkey and Kirlin laughed. DeJesus also said he needed to speak to someone and that he was not supposed to be in the SHU.

\* \* \* \*

**The DOC Investigation Results:** The DOC concluded that Kirlin violated policy by failing to ensure that proper wellness checks ("checks and punches") occurred every thirty minutes. In fact, the DOC concluded that no security checks and phone punches were conducted for approximately two hours. The DOC explained that such checks are required to ensure the "security of both staff and offenders."

3

> Kirlin claims he did not know DeJesus was having mental health issues, but admits that [if] he would have known this, he would have "cuffed him and called, and moved him to the interview room, and then notify mental health to come talk with him." As a result, there was a known protocol in place for mental health distress precisely like DeJesus's.

D.I. 76 at 1–4 (citations omitted).[1]

## II.   LEGAL STANDARDS

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the burden of persuasion at trial would be on

---

[1] I copied Plaintiffs' statement of facts in its entirety except in three respects: I deleted a reference in a heading to the DOC's suicide prevention policy, a description of that policy, and a statement that DeJesus hung himself after DOC employees failed to conduct proper wellness checks.  I made these deletions because Plaintiffs emphasized on appeal, and the Third Circuit agreed, that Plaintiffs' vulnerability to suicide claim was distinct from their serious medical need claim.  *See DeJesus*, 833 F. App'x at 939 (noting that Plaintiffs had argued that they had "established a sufficient record to show [Defendants] were deliberately indifferent to [DeJesus's] serious medical condition (*aside from suicide[] itself*)") (alterations in original) (emphasis added) (citations omitted); *id.* (holding that Plaintiffs' claim of deliberate indifference to a serious medical need is "distinct from [the] claim that Defendants were deliberately indifferent to a vulnerability to suicide"); *id.* at 940 (holding that indifference to vulnerability to suicide and indifference to a serious medical need are "two different claims, and the District Court did not examine one of them").

4

the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v.*

5

*Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

## III.   DISCUSSION

In remanding this case, the Third Circuit instructed that when a plaintiff seeks to hold a prison official liable for deliberate indifference to a serious medical need under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, the plaintiff must show that three circumstances existed: "(1) he had a serious medical need, (2) defendants were deliberately indifferent to that need, and (3) the deliberate indifference caused harm or physical injury to the plaintiff." *DeJesus,* 833 F App'x at 940 (citations omitted). I will grant Defendants' motion because I find that the record evidence does not support a finding that DeJesus had a serious medical need aside from vulnerability to suicide, that Defendants were deliberately indifferent to that need, or that Defendants' deliberate indifference caused a harm or injury to DeJesus distinct from his vulnerability to suicide.

6

## A.   Whether DeJesus Suffered from a Serious Medical Need

Plaintiffs argue that the medical need Defendants were deliberately indifferent to was "DeJesus's serious mental anguish and distress." D.I. 76 at 5. But they do not elaborate further on what symptoms this mental anguish and distress consisted of outside of DeJesus's vulnerability to suicide; nor do they claim that DeJesus had any specific mental health illness. They do not cite any case that examines "serious mental anguish and distress" as an independent serious medical need unassociated with a mental illness or a vulnerability to suicide. The only case they cite where a mental health condition is the identified serious medical need in a deliberate indifference claim is *Palakovic v. Wetzel*, where, unlike here, the inmate "was diagnosed with a number of serious mental disorders, including alcohol dependence, anti-social personality disorder, and impulse control disorder" and "exhibited signs of depression." 854 F.3d 209, 216 (3d Cir. 2017).

Plaintiffs also argue that "a failure to respond to an inmate's request for medical care is sufficient to establish a 'serious' medical condition." D.I. 76 at 6. But this argument collapses the threshold inquiry of whether DeJesus had a serious medical need with the independent question of whether Defendants were deliberately indifferent to that need.

In *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), the Third Circuit held that a medical need is serious if (1)

7

it "has been diagnosed by a physician as requiring treatment," (2) it "is so obvious that a lay person would easily recognize the necessity for a doctor's attention," or (3) where the denial of treatment would result in the "unnecessary and wanton infliction of pain[,] . . . a life-long handicap or permanent loss." Here, the record does not support a finding that DeJesus suffered from a serious medical need independent of his vulnerability to suicide.

First, there is no record evidence that DeJesus's mental distress had been diagnosed by a physician as requiring treatment. Second, the record evidence does not suggest that DeJesus's condition or the statements he made while in the SHU would have made his mental distress and anguish so obvious that a lay person would have recognized the necessity for medical attention. This is so especially given the fact that medical professionals had cleared and discharged DeJesus from the infirmary on the same day and just before Defendants are alleged to have encountered DeJesus.

While there is inmate testimony that DeJesus looked disheveled and that he told Defendants he wanted to speak to someone, wanted to leave the SHU, did not feel well, and wanted "mental health," this testimony, even if true, does not support a finding that medical attention was obviously urgently necessary. That DeJesus looked "disheveled" would not have made it obvious that he needed immediate medical attention. DeJesus may have looked disheveled for many reasons

8

unrelated to experiencing serious mental distress. DeJesus's alleged statements to Officers Kirlin and Starkey that he needed to speak to (or call) someone, that he needed help, and that he couldn't take being in the SHU also would not have made it obvious to a layperson that he was experiencing serious mental anguish and distress. DeJesus may have wanted to speak to someone, receive help, and leave the SHU for reasons that had no connection to a mental health condition. Prisons in general, and special housing units especially, are not pleasant places to be. It's hard to conceive of an individual who would not feel anguish and distress if confined to a special housing unit. In the same conversations in which DeJesus stated that he needed to speak to someone and needed help, he also said he "wasn't supposed to be in the SHU." D.I. 76, Ex. B at 8:15, *see also* D.I. 76, Ex. E at 14:14–16. As common sense suggests and as Officer Starkey noted, "it is not uncommon for inmates to say that they should not be in SHU." D.I. 75 at A–34 ¶ 3. Even if DeJesus had requested to one officer that he be permitted to talk to "mental health," that statement by itself would not have made it so obvious to a layperson that DeJesus was experiencing "serious mental anguish and distress" that urgently required medical attention.

Plaintiffs argue that "[j]ust because a mental health condition is not readily visible (such as, perhaps, a physical trauma) does not render it any less serious." D.I. 76 at 11. And, of course, it is often the case that a mental illness or a hidden

9

physical condition such as internal bleeding or a cancer is very "serious," as that term is used generally. But "serious medical need" carries a specific meaning in the context of § 1983 deliberate indifference claims. Unless the inmate's condition was diagnosed by a doctor as requiring treatment, the condition is not a "serious medical need" if it would not have been obvious to a layperson that the inmate needed medical care. This rule makes sense. We don't require prison guards to earn medical degrees and thus we don't hold them liable for their failure or inability to diagnose medical conditions that a layperson would not recognize.

Third, Plaintiffs do not allege that DeJesus suffered "unnecessary and wanton infliction" of pain, permanent loss, or injury aside from the anguish and distress he suffered that made him vulnerable to suicide.[2] Nor could they. Because

---

[2] I note that a claim of deliberate indifference to an inmate's vulnerability to suicide can encompass deliberate indifference to the inmate's anguish and distress that led him to attempt or commit suicide—i.e., that made him vulnerable to suicide. *See, e.g., Hensley v. Bucks Cty. Corr. Facility*, 2016 WL 4247637, at *10–11 (E.D. Pa. Aug. 11, 2016) (holding that plaintiff "sufficiently alleged that he had a particular vulnerability to suicide" where he had attempted suicide before and had complained that he "was experiencing undue mental stress" and was "starting to get depressed and feel like [he is] losing [his] mind"); *Carroll v. Lancaster Cty.*, 301 F. Supp. 3d 486, 500 (E.D. Pa. Mar. 14, 2018) (finding that plaintiffs supported "their argument that [the decedent] had a particular vulnerability to suicide" in part by pointing to an intake form that showed that decedent "had been the victim of a sexual offense, lacked close friends or family in the community, had recently experienced a significant loss, was worried about major problems, had a history of mental health treatment and was overly anxious, panicked, afraid or angry"). When I previously addressed Plaintiffs' deliberate indifference claim based on DeJesus's vulnerability to suicide, I considered the mental anguish and distress he suffered that led him to commit suicide.

it would not have been obvious to a layperson that DeJesus was experiencing

serious mental anguish and distress distinct from his vulnerability to suicide and

because there is no evidence that Defendants knew that DeJesus was experiencing

serious mental anguish and distress distinct from his vulnerability to suicide, it

cannot be said that Defendants unnecessarily and wantonly inflicted on him pain or

injury distinct from his vulnerability to suicide.

In short, because the record evidence does not support a finding that DeJesus

suffered from a serious medical need aside from his vulnerability to suicide,

Plaintiffs' distinct claim of deliberate indifference to a serious medical need fails

as a matter of law.

**B.     Whether Defendants Were Deliberately Indifferent to DeJesus's Need**

Even if Plaintiffs could establish that DeJesus suffered from a serious

medical need aside from vulnerability to suicide, the record evidence does not

support a finding that Defendants were deliberately indifferent to that need.  To

show deliberate indifference, a plaintiff must show "that the official knows of and

disregards an excessive risk to inmate health or safety." *Natale v. Camden Cty.*

*Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (internal quotation marks and

citation omitted).  The officers must be both "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and . . .

draw that inference." *Id.* (citation omitted).

11

Here, Plaintiffs have not adduced record evidence showing that Defendants

knew, were aware of, or failed to respond to an excessive risk to DeJesus's health

or safety distinct from a vulnerability to suicide.  Plaintiffs argue that DeJesus's

dishevelment, his request to speak with someone and make a phone call, his

statements that he did not belong in the SHU, felt sick and was "not right" and

anxious, and his potentially asking to speak "with mental health" raise a genuine

issue of material fact that Defendants knew and were deliberately indifferent to

DeJesus's serious mental distress.  D.I. 76 at 6–8.  But these statements indicated

at most that DeJesus was *possibly* experiencing mental distress.  They do not rise

to the level of showing that Defendants inferred that DeJesus was experiencing

mental distress and were deliberately indifferent to that distress.  *See Hargrove v.*

*City of Phila.,* 1995 WL 584490, at *2 (E.D. Pa. Oct. 3, 1995) ("An officer is

deliberately indifferent to the medical needs of a person in custody when there is 'a

strong likelihood, rather than a mere possibility, that . . . harm will occur' to the

person . . . ." (citing *Colburn v. Upper Darby Twp.,* 946 F.2d 1017, 1024 (3d Cir.

1991))).  Plaintiffs' argument is essentially that Defendants should have recognized

from DeJesus's statements that he was in severe mental distress.  But deliberate

indifference "requires more than evidence that the defendants *should* have

recognized the excessive risk and responded to it; it requires evidence that the

defendant *must* have recognized the excessive risk and ignored it." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 138 (3d Cir. 2001) (emphasis in original).

Plaintiffs also argue that Defendants' failure to conduct proper wellness checks on DeJesus supports their argument that Defendants were deliberately indifferent. D.I. 76 at 8–9. While the record does contain evidence that Officer Kirlin was negligent in failing to complete area checks and phone punches in the SHU, negligence does not amount to deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . .").

Lastly, there is inmate testimony in the record that Officer Drace responded with sarcasm to DeJesus's request for a phone call, D.I. 76, Ex. C at 14:4–14, that Officers Starkey and Kirlin laughed when DeJesus was crying while asking for a phone call, D.I. 76, Ex. E at 10:17–20, 12:4–21, and that Officers Starkey and Kirlin brushed off DeJesus's requests, D.I. 76, Ex. D at 9:20–22. These reactions and responses, though perhaps not sufficiently sympathetic to DeJesus's emotional state at the time, do not rise to the level of deliberate indifference.

In short, the record, viewed in the light most favorable to Plaintiffs, does not support a finding that DeJesus suffered from a serious medical need aside from vulnerability to suicide or that Defendants acted with deliberate indifference to a

13

serious medical need.  Accordingly, Plaintiffs' claim of deliberate indifference to a

serious medical need fails as a matter of law.

> ### C.    Whether Defendants' Deliberate Indifference Caused Harm or Physical Injury to DeJesus

The record evidence also does not support a finding that Defendants' alleged

deliberate indifference caused harm or physical injury to DeJesus aside from his

vulnerability to suicide.  As discussed above, Plaintiffs emphasized on appeal, and

the Third Circuit agreed, that Plaintiffs' vulnerability to suicide claim was distinct

from their serious medical need claim.  Plaintiffs have not identified and there is no

record evidence on which to base a finding of a resulting harm or injury that

DeJesus suffered separate from the distress that made DeJesus vulnerable to and

ultimately a victim of suicide.

## IV.   CONCLUSION

For the foregoing reasons, I will grant Defendants' motion for summary

judgment.

The Court will enter an order consistent with this Memorandum Opinion.

14